Good morning. Our next case for argument is 20-1700 Acceleration Bay v. Take-Two Interactive. Mr. Frankel, please proceed. May it please the Court. Good morning, Your Honors. This case is squarely within the CENTRAC case and not Centillion. The key holding of CENTRAC is that the defendant infringes by making the final assembly or configuration of the accused system. Here, Take-Two is the only party that assembles the infringing networks. The district court committed legal error by focusing on the fact that Take-Two's customers supply the components that are used to make the infringing network. However, it is Take-Two that combines the various components to make the infringing network. If Take-Two disappeared, the multiplayer functionality of the accused products could not operate and the networks could not be formed. Take-Two receives requests from its customers to join a multiplayer game and then it stitches together those individual customers to form the infringing multiplayer network. Only Take-Two has the servers and the infrastructure. Counsel, this is Judge Reina. How do you account for the fact that the players make the decision whether to join the game or not? The act of infringement does not occur until the participants are connected to form the network. So the players have to decide that they want to play.  But if 16 players have all decided... And how do they, once they decide that, what does a player need to do in order to join the network? A player's got to take action, correct? That is correct. A player selects a multiplayer mode for one of the accused products. So at that time, a network is formed once you get sufficient players. I disagree with that, Your Honor. If 16 players have decided they want to play the multiplayer mode and they've selected the multiplayer mode, all that happens at that point is that they send a request to Take-Two to participate in the game. Then Take-Two's servers will connect the players to actually form the network. Again, if Take-Two's servers were down and 16 players went on their computers and said, I want to play multiplayer, nothing would happen. Only Take-Two has the ability to receive those requests and then to stitch the players together to form the network. And that's squarely within the SENTRAC facts. In SENTRAC, the customers had contacted the defendant and said, I have these components in place. I'd like you to create the network for me. And then Sonitor would come in and do the final assembly and configuration of the network. Here, it is true that the players have to decide that they would like to play the game and request to play the game. But only Take-Two can put them together and make the infringing network. Until Take-Two performs that final step of assembling the network, there is no infringing network. If no players ask to play the game, then there's nothing that Take-Two can do or does. That is correct. And that would be, again, true in the case of SENTRAC. If no customers went to Sonitor and asked to have a network built for them, there would never be infringement. But the SENTRAC analysis focuses on who performs the final step to assemble the network and take it across the finish line to become an infringing network. But, counsel, can I get you to focus for a second on the 497 patent, and in particular Claim 9? Claim 9 of the 497 patent is directed to a component in a computer system for locating a call-in port. The district court construed that, and you haven't appealed it, and they construed it as the end user's processor in their computer system. So this entire claim is directed to not the Take-Two server, but rather the end user's own processor within its computer. Under those circumstances, how can Take-Two be the direct infringer as opposed to potentially an induced or contributory infringer? Claim 9 of the 497 patent is infringed when software is controlling the processor to perform the process of connecting to Take-Two's server. The software, it is undisputed, is owned and controlled only by Take-Two. Customers do not purchase the software from Take-Two. They pay for the right to use the software. And when the player of a game says that they want to connect to the system... Yes, but counsel, this is a claim to the end user's computer. Well, the claim is to the combination of the software and the processor. It's not just the processor.  So that's why I was saying, how can Take-Two be a direct infringer when you just acknowledge that the claim is to the combination of the customer's processor plus the software? Take-Two is only providing one of those two components, the software. The customer is providing the processor, and that's an express limitation of this claim. That is correct, Your Honor, but under the holding of CENTRAC, the focus is not on who supplies the components. It's the party that combines them. And it's Take-Two that combines the software and the processor. Until the software begins operating and controls the processor, there's no infringement of the 497 patent. When you say it's Take-Two that is the one that's controlling it and doing it, I'm sorry, but if the user doesn't activate, if the user doesn't engage the software on their computer, how could Take-Two possibly be causing infringement? It kind of goes back to Judge Reyna's question, which is if the user doesn't turn on and try to join the game, can Take-Two be an infringer? Well, the answer to that is no, that the user has to perform the predicate act, just as there's a requirement for electricity and an Internet connection. But the focus under the CENTRAC analysis is not has a customer made a request, it's who performs the action of the combination, which is what makes the infringing component. So when the customer says, I would like to play Grand Theft Auto and I would like to be connected to the matchmaking server, infringement has not yet occurred. Then when Take-Two's software, working with Take-Two's server, controls the processor on the computer, that and only then is when the act of infringement occurs. And that is why Take-Two is a direct infringer as a part of Take-Two. So, Counselor, exactly what's your theory here? Now you're arguing control. And I thought your argument was more that an assertion that the processes is in the making the processor. Making the processor as opposed to control. You argue control now. It seems to me that your primary argument was making. Correct. As construed by the court, the component is a processor operating the software. So when the processor is running and being controlled by the software, that's when it becomes infringing. That's when the software is controlling the processor. So simply installing the program on a computer has not yet created the infringing combination of software and processor. It seems to me then that you're running head on into my prior questions, and that's the role of the user who actually turns on, decides not only whether to join a game, but to join the game or to join specific individuals located across the country or maybe even across the world to get together to play, let's say, Halo. Well, for these accused products, Your Honor, the user does not have the ability to connect to particular players on their own. Again, if Take-Two vanished, none of that would be possible. The user's software talks to Take-Two's servers. That's how it becomes connected to the game. And it's Take-Two that provides that service, and, in fact, they sell the service. That's the other form of infringement at issue here of being able to connect to the other players. Again, only Take-Two has the ability to combine the players together to form the network. That's not something that they – Counsel, this is Judge Morgan. This argument you say pertains, I think, to the 344, 966, and 497 patent. Is that correct? Correct, Your Honor. Okay, but the 344 and the 966 patents were independently found not to infringe by virtue of the M regular limitation, which is expressly contained in them, and you have not appealed that holding as to those patents. Is that correct? Well, that's not entirely correct, Your Honor. We have appealed and asked for reversal of the finding of non-infringement. Wait, wait, wait. Am I right in understanding that the 344 and 966 were found not to infringe for two independent reasons? There were two reasons, but they're not independent, Your Honor. The district court's focus was on who is performing the actions, and I would direct you to append it. Wait. Did or did not the district court find the 344 patent and the 966 patent not infringed by virtue of the M regular limitation? That is correct, Your Honor. And you did not appeal that with regard to those two patents? Well, if I could explain, the basis for the district court's decision, and I would direct you to Appendix 160, is that the network is not M regular because the participants just happened to connect. But, counsel, you haven't appealed this issue. Well, our first issue is whether the district court erred in granting summary judgment of non-infringement of the 344, 966, and 497 by finding that Take-Two does not make or sell the infringing network. The focus is on the actor, but the district court's finding is based on the fact Let me be specific. The district court's finding with respect to M regular is based on the fact that the players are the ones who are choosing connections, and that's incorrect on the facts and incorrect on the law. And the legal error has been the focus of this appeal. When you directed me to page 160 of the appendix, which is page 14 of the opinion, isn't that where the district court says, even viewing this evidence in the light most favorable to plaintiffs, no reasonable jury could find GTAO meets the M regular limitation? Correct, and I was reading from the following sentence, Your Honor. I am really baffled. I don't understand your argument. I read this district court opinion as finding summary judgment of non-infringement on the basis of these two patents for two independent grounds, one of which you did not appeal. We did not appeal the findings with respect to M regular, but we did appeal the findings with respect to the making, and it's the district court's focus on the actor. Yes, but the court held the product didn't infringe these two patents on the basis also of the M regular limitation. So your appeal could not result in a different outcome with regard to those patents because you did not appeal one of the independent grounds for non-infringement. I understand your point, Your Honor. What I'm saying is that it's not an independent ground. It's based on the district court. The prism and foundation for the district court's decision was that the players are the ones making the connections. I thought you conceded on page 11 of your reply brief that you're only appealing one of multiple grounds for the district court's non-infringement decisions. You're appealing only one of multiple grounds. So if you leave other grounds out there and you're not appealing them, it just seems to me that the summary judgment issue of non-infringement with respect to 344 and the 966 patent is moot. Well, there are multiple grounds that it's not moot, even if you find that the issue of M regular is not on appeal. The decision for all three patents was a collective one. There's only a sentence or two of analysis for the 497. The district court's decision is based on multiple grounds. You've only appealed one. That means that your appeal with respect to the 344 and 966 patent is moot. Your Honor, the point is that if the case is remanded with the instruction as it should be under CENTRAC, that the district court should focus on the actions of take two as the one who's making the networks, then it would need to reevaluate this issue as well because its decision in the portion I pointed to was based on the actions of the customers and not on the actions of take two. Okay. Counsel, why don't we move on and hear from opposing counsel. Thank you. Good morning, Your Honors. This is Mike Tomasulo for defendants and appellees. Can you hear me okay? Yes. So you're absolutely correct that the 344 and the 966, that decision is moot. And I don't think I need to spend much time on that. As to the 497, again, Judge Moore, you're absolutely correct. The accused device is the game console running our software. And that accused device does not exist until the customer installs it. Just like in Centillion, the customers, not us, makes the accused device. Unlike CENTRAC, there's no evidence that we ever act as an installer. And I'll also note that you have collectively and now I have. Counsel, so you believe that a customer makes the device encapsulated by Claim 9 when they install it on their computer. Is that right? I would say the customer makes the device accused of infringing Claim 9 when they install that software on the computer, the customer's computer. And so you believe if there is a direct infringer, it is the customer. Correct. And there is no indirect infringement allegations in this case. Okay. I would also notice to all of these issues, you have now heard far more argument and received far more briefing than the district court ever did. As to the 497, this issue was never raised below. That is all on two pages or about one minute at JA26276. None of these arguments were ever made. The stitch together theory was never made. There was never any citation to evidence. No expert ever said anything that Mr. Frankel just said. With your permission, I could move to the 069 if you would like. Sure, go ahead. The claim requires an M regular network because the claim is limited for at least two reasons to the large regime. And in the large regime, the network is M regular. That is what the district court found, and acceleration never really challenges or even acknowledges either of these findings. The claim uses the term fully connected. A fully connected computer is explicitly defined in the specification as a computer or computer process that has exactly M connections in the large regime. When you say it's specifically defined in the spec, that's within the context of an embodiment that's already been specified as a M regular, in fact, four regular network, right? So, of course, fully connected in a four regular network would mean that. So I think that is correct. I believe as there are many, if you look through the specification as to, for instance, the term fully connected, it is used consistently to mean that in the large regime, each participant is connected to exactly M neighbors or participants, and that in the four regular embodiment, that number is four. But if you look at, I think it is joint appendix 441, which is column 14, lines 51 through, I think, 56, what it says is in the embodiment described above, each fully connected computer has four connections. The broadcast technique can be used with other numbers of internal connections. For example, each computer could have six, eight, or any even number of internal connections. So I think that when it has used the term fully connected, and generally it does state that it's connected to four neighbors, that is a shorthand for saying it's connected to M neighbors. So I'm trying to figure out if that's right. That is under the header M regular, right? So there's M regular, and then it says in the embodiment described above, each fully connected has four internal connections. Then it says it could be six, eight, or any even number. And then a little further down in that same paragraph, it says that if the number of internal connections is odd, then the broadcast channel has an odd number of computers connected. One of the computers will have less than the odd number of internal connections. And then it spans on the next page to continue talking about how it could be odd. Thus, with an odd number of internal connections, the broadcast channel toggles between being and not being M regular. So what does that mean? And what does that mean for the words fully connected? I believe column 14 is disclosing the possibility of an odd number of connections. And when there are an odd number of connections, it wouldn't be M connected until it kind of flips to the even number, right? It sort of suggests it could toggle between being M regular and not M regular. Does that make sense? Am I explaining that right? I think that you've shown a good command of the subject matter, a remarkable command of it. So what I would direct you to is the district court's construction of M regular. There's a difference between being configured to be an M regular network and to be a network that has the mathematical properties of being exactly M regular. And so what I mean by that is what the district court said is that it construed M regular to mean a state that the network is configured to maintain where each participant is connected to exactly M neighbor participants. And he says under my claim construction, a network is not M regular if participants just happen to connect to the same number of other participants occasionally. Rather, the network must be configured to maintain an M regular state. And he goes on to say that, in other words, you try to get to that state where appropriate. So from a mathematical standpoint, a network that has an odd degree of regularity cannot be – everybody cannot have exactly M connections when there's an odd number of participants in the network. So that's what they mean. So, counsel, I guess you're sort of saying a lot of stuff, and maybe I'm not totally following it. I don't know. But I guess I'm looking at the bottom of Column 14 and the top of Column 15, and I believe it is suggesting that you could have an odd number of internal connections which would result in a network that is not configured to maintain an M regular state. Is that fair? Respectfully, no. What that means is that it will try to – in other words, each of these – a certain number of holes, which it calls – there will be four internal holes, and they're each programmed to fill those holes with a connection. And so when there's an odd number – when there's an odd degree of regularity and an odd number of neighbors, one of them won't be able – just one won't be able to have exactly M connections. But as soon as another participant either leaves or joins, then they will restore M regularity for each and every participant so that that one participant that isn't M regular, there will be one participant only in a network that doesn't have exactly M connections when the network has an odd degree of regularity and an odd number of neighbors. That's the only time any participant that's fully connected to the network won't have exactly M connections, and that's why they advocate for – So are you saying that this claim and this invention, but this claim in particular, covers networks which can persist with an odd number so long as they're attempting to get back to an M regular state and then eventually do? I mean, you're describing a scenario in which there will be a portion of time when this network will not be in an M regular state, right? That's exactly right. The district court's construction is that – it's summarized at JA-160, which I think is exactly where you were. And what the district court says there, it says, as I explained, my construction does not require the network – this is with respect to an M regular network, and this is something that was not appealed. My construction does not require the network to have each participant to be connected to M neighbors at all times. Rather, the network is configured or designed to have each participant be connected to M neighbors. In other words, if the network does not have each participant connected to M neighbors, this is fine so long as when appropriate it tries to get to that configuration. So if you have computers – if you have chosen an even degree of regularity, it will always be possible for it to achieve a state that's mathematically M regular where each and every participant has exactly M connections. I get it. So you're telling me that what appears in the bottom of 14 and 15 is encapsulated with the unappealed district court's construction of what it means to be M regular. See, I read it at first and I was confused about whether or not the description of the potential for an odd number and toggling back and forth created a problem. But you're saying the district court's construction fully encompassed that. A hundred percent. And it wasn't appealed? It was not appealed. Got it. Any further? Well, I could continue to discuss this for six years as I have or I could – That would probably not be to your advantage. Then I will sit down and turn the time over to my colleague. Okay. So, counsel for Acceleration Bay, you have rebuttal time. Please proceed. Thank you. So I'll address the arguments regarding the 069 pattern. And the 069 pattern has several concepts. One of them is that the network can be M regular, but it does not require the network to be M regular. And I would direct the court's attention to Appendix 436 at Column 4, Lines 5 through 30. And there, the first concept described in the pattern is an incomplete network where messages are relayed from one participant to its neighbors. And it goes on to say that, as an example, it can be a regular network. That's at Column 4, Line 30. But it does not require the network to be M regular. So then we look at the plain language of Claims 1 and 14, and Claim 1 only says that each participant has to be connected to at least three neighbors. The district court actually agreed that under the plain language – Counsel, don't waste your time on the each participant language. Focus on the fully connected language. That's the language that I can't figure out what it means if it doesn't mean M regular. Fully connected means connected to the maximum number of connections. Actually, Counsel, I think that would not be right, right? Imagine a hub-and-spoke system. You've got a portal computer connected to every single computer. That would be the maximum number of possible connections. But that's not what this claim is directed to, is it? Well, it's not that each participant is fully connected. It's that the portal computer is fully connected. It's a fully connected portal computer. So the portal computer could and should be connected to all of the participants. The portal computer is the – if you want to join the network, you contact the portal computer. The portal computer says, I know everyone who's participating in this game. I understand your definition of fully connected. You're saying the portal computer must be connected to every single participant. What embodiment in this patent discloses that? Well, there's actually no discussion of what it means of the portal computer being fully connected. The reference to fully connected is only with reference to the individual participants in the examples where the network could be unregular. And that's where the district court went astray by looking at what it means for, in an unregular network, a participant to be fully connected, and then jumping from that to the reference to a fully connected portal computer. So you're saying there is nothing in the specification from which I could glean that a fully connected portal computer is, as you say, a portal computer that is connected to every single participant? Well, Your Honor can look to the fact that fully connected means connected to the maximum number of connections, and then the general discussion of the portal computer. There's equally no discussion in this specification. But where does something tell me that fully connected means connected to the maximum number of participants?  It only appears a few times. Counsel, I can't find anything in the 069 patent that says anything like that. The fact that it's fully connected means connected to the maximum number of connections? Correct. Thank you. So, Your Honor, I have to find the exact site. But the reference, every time fully connected appears, it's discussing the individual participants in the unregular context. And each time it says it's connected to that maximum number of connections. Counsel, can you point where it uses the word maximum? Especially in your brief, I don't know that you ever argued maximum, maximum number of participants. Number of participants, yes, but maximum. Okay. Yes, so on page 19 of the reply brief, fully connected can refer to a portal computer that is connected to all participants, not just to M participants. There is no reason a portal computer cannot be fully connected to a network that is not M regular. In other words, that the portal computer is fully connected has no bearing on the structure of the rest of the network. Justin, can I just be clear about one thing? You think the word fully connected means connected to every single participant when it's referring to the portal computer. Is that correct? That's 100% correct, Your Honor. Would that still encapsulate an M regular network? It could encapsulate an M regular network, and it could encapsulate a network that's not M regular. No, actually, it wouldn't, right? It wouldn't encapsulate an M regular network, because in the M regular network, each person has the same number of internal connections, correct? In the M regular network, each participant in the network is connected to M neighbors. The portal computer is not a participant in the network. The portal computer is the matchmaking computer that introduces everyone to the network, but it's not part of the broadcast channel itself. The portal computer is different from a regular participant in the network. The portal computer is performing the matchmaking function, not the broadcasting function. Okay, I think we've exhausted our time for today. Barring any questions from my colleagues, I think that we will take this case under submission. The Honorable Court is adjourned until tomorrow morning at 10 a.m. Thank you.